**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X
                                                               :
                                                               :
                                                               :
In re Subpoena to Loeb & Loeb LLP            :    Misc. Civil Case No. 19-MC-241-PAE
                                                               :
                                                               :
                                                               :    **ORAL ARGUMENT REQUESTED**
                                                               :
                                                               :
                                                               :
------------------------------------------------------------- X

**LOEB & LOEB LLP'S MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**
**AND IN SUPPORT OF CROSS-MOTION TO QUASH**

LOEB & LOEB LLP

Evan K. Farber
William M. Hawkins
Erin Smith Dennis
345 Park Avenue
New York, NY 10154
(212) 407-4000

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ..............................................................................................................3

      A.     The Underlying Transactions and the SDNY Lawsuit ...............................3

      B.     The Decade Bankruptcy and Adversary Proceeding ..................................5

ARGUMENT ....................................................................................................................6

I.     Loeb Timely Objected to the Subpoena................................................................6

II.    The Subpoena Fails to Comply with Fed. R. Civ. P. 26(b)(1) and 45(d)(1)........7

      A.     The Federal Rules Require Proportionality of Discovery and Forbid Imposing an Undue Burden on Subpoenaed Nonparties .................7

      B.     The Subpoena Is Not Proportional to the Needs of the Adversary Proceeding and Imposes an Undue Burden on Loeb .................8

      C.     The Goodwins' Arguments to the Contrary Are Unavailing....................11

III.   The Goodwins Should Be Required to Pay Loeb's Costs ..................................13

CONCLUSION................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
    297 F.R.D. 223 (S.D.N.Y. 2013) ........................................................................................8

*Blake Marine Grp., LLC v. Frenkel & Co.*,
    No. 18-CV-10759 (AT) (KHP), 2019 U.S. Dist. LEXIS 66399
    (S.D.N.Y. Apr. 16, 2019).............................................................................................7, 8

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    No. 12-CV-5067 (JFK) (JLC), 2017 U.S. Dist. LEXIS 171685
    (S.D.N.Y. Oct. 17, 2017) .............................................................................................7, 8

*Mackey v. IDT Energy, Inc.*,
    No. 19 Misc. 29 (PAE), 2019 U.S. Dist. LEXIS 77101
    (S.D.N.Y May 7, 2019) (Engelmayer, J.) .....................................................................7, 8

*In re Namenda Direct Purchaser Antitrust Litig.*,
    No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 139983
    (S.D.N.Y. Aug. 30, 2017) .....................................................................................10, 11, 15

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*,
    No. 09-CV-3855 (JS) (AYS), 2018 U.S. Dist. LEXIS 58729
    (E.D.N.Y. Mar. 31, 2018) .............................................................................................14

*Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*,
    No. 15 Misc. 191 (LTS), 2015 U.S. Dist. LEXIS 177919
    (S.D.N.Y. Oct. 6, 2015) ...............................................................................................14

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12 Civ. 6811 (CM), 2012 U.S. Dist. LEXIS 158448
    (S.D.N.Y. Nov. 5, 2012) .....................................................................................13, 14, 15

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..................................................................................... *passim*

Fed. R. Civ. P. 45.............................................................................................. *passim*

Loeb & Loeb LLP ("Loeb") respectfully submits this memorandum of law in opposition

to the motion by Aaron Goodwin, Regina Goodwin, and Eric Goodwin (collectively, the

"Goodwins")[1] for an order compelling compliance with a nonparty subpoena *duces tecum* served

on Loeb on March 5, 2019 (the "Subpoena"), and in support of Loeb's cross-motion to quash or

modify the Subpoena.

## PRELIMINARY STATEMENT

This is a textbook case for the application of Rule 26(b)(1)'s requirement that discovery

be "proportional to the needs of the case," and of Rule 45(d)(1), which provides:

> A party or attorney responsible for issuing and serving a subpoena must take
> reasonable steps to avoid imposing undue burden or expense on a person subject
> to the subpoena.  The court for the district where compliance is required must
> enforce this duty and impose an appropriate sanction – which may include lost
> earnings and reasonable attorney's fees – on a party or attorney who fails to
> comply.

The underlying litigation relates to transactions involving the Goodwins; a set of parties

collectively known as "Decade," which sought to purchase the Goodwins' companies; and a

lender to Decade, XXIII Capital Limited ("23 Capital").   Loeb was not a party to the

transactions, nor was it counsel to the Goodwins – or to their counterparty (Decade).   Instead,

Loeb was counsel to 23 Capital, which was the Goodwins' counterparty's counterparty.  Loeb's

actions are not at issue in the current underlying litigation, and Loeb's former client is not even a

party to it.

Loeb has already produced to the Goodwins 1,689 documents, totaling 13,162 pages,

---

[1] The underlying adversary proceeding in the Delaware bankruptcy court was brought against,
and the subpoena at issue in this motion was served by, Aaron, Regina, and Eric Goodwin.
Regina Goodwin was not a party to the initial transactions that spawned this litigation, nor a
party to the initial lawsuit filed in this Court.  Whether or not the definition of the "Goodwins"
includes Regina Goodwin is of no moment to this motion, and accordingly, this brief uses the
term interchangeably.

containing its communications with Decade and Decade's counsel related to the transactions – that is, the communications in Loeb's possession which could arguably be of import in the underlying matter.  The Subpoena now seeks production of the remainder of Loeb's documents related to these transactions – which, practically speaking, means confidential communications between Loeb and its client, as well as confidential communications among lawyers at Loeb. There appear to be approximately 25,000 such documents.  All are likely privileged; there is no serious contention to the contrary.  Nevertheless, the Goodwins demand that Loeb undertake the expense and effort of processing and reviewing approximately 25,000 documents for the sole purpose of listing them on a privilege log.  Moreover, since the Goodwins have also subpoenaed 23 Capital and secured an order requiring it to produce a privilege log, much of Loeb's log would simply duplicate 23 Capital's.  For all of these reasons, the exercise the Goodwins demand is pointless.  Indeed, the Goodwins have not even articulated what probative evidence they seek to discover, despite multiple meet and confer communications.  In light of these facts, the Goodwins' demand would fail even the proportionality test of Rule 26(b)(1), let alone the heightened standard of Rule 45(d)(1).

Loeb has repeatedly offered to process and review documents responsive to narrowly tailored requests, but the Goodwins have refused to narrow the Subpoena in any meaningful way, or even to identify what evidence they are hoping to find, which might enable Loeb to suggest ways to narrow the scope.  Nor are the Goodwins willing to defray Loeb's costs of compliance – which would be substantial.  The Goodwins have thus utterly failed to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," as Rule 45(d)(1) requires.  Accordingly, the Court should deny the Goodwins' motion to compel and grant Loeb's cross-motion to quash the Subpoena.

## BACKGROUND

### A.      The Underlying Transactions and the SDNY Lawsuit

As alleged in 23 Capital's initial complaint in this Court, in a series of integrated transactions dated on or about February 22, 2016, the Decade entities purchased two sports agencies that had been owned and managed by the Goodwins, and 23 Capital extended a $20 million senior secured loan to Decade to fund that transaction.[2]  23 Capital's loan was secured by commission payments from athletes who had been clients of the Goodwins' sports agencies (and became Decade's clients through the transactions).  Upon the closing of the transactions, the Goodwins received a down payment of $9.5 million and became senior employees of Decade. *See XXIII Capital Ltd. v. Decade, S.A.C., LLC, et al.*, Case No. 17 Civ. 6910 (GHW) (the "SDNY Lawsuit"), Docket #1 (Complaint), ¶¶ 27-51, and Exhibits A-D thereto.

23 Capital alleged that Decade repeatedly failed to make required payments against the loan, and in December 2016, 23 Capital sent Decade a default letter. *See id.* at ¶¶ 62-69.  In mid-2017, 23 Capital alleged, it learned that Decade's underpayments were occurring because Aaron Goodwin was receiving the relevant payments directly from the athletes, retaining a large portion for himself, and then forwarding only a smaller portion to Decade, in violation of his obligations under the various transaction documents. *See id.* at ¶¶ 78-80.  In September 2017, after numerous additional communications, 23 Capital filed the SDNY Lawsuit against Decade and the Goodwins, seeking recovery for breach of the loan agreement and pursuant to 23 Capital's rights as a secured creditor under the Uniform Commercial Code, among other things. *See id.*

---

[2] "Decade" refers collectively to Decade, S.A.C., LLC, Decade, S.A.C. Contracts, LLC, Decade, S.A.C. I, LLC, Decade, S.A.C. II, LLC, Decade, S.A.C. III, LLC, Decade, S.A.C. Executives, LLC, and Gotham S&E Holdings, LLC; the two sports agencies which Decade purchased in these transactions, Goodwin Associates Management Enterprises, Inc., and Goodwin Sports Management Inc.; and Decade principals Christopher Aden and Dorsey James.

Both sets of defendants filed Answers with counterclaims and crossclaims. *See* SDNY Lawsuit, Docket #75, 76. Most significantly, the Goodwins asserted that they should not be bound by the sale of their sports agencies because they thought they were signing a different version of the agreement and never intended to sell their agencies under the terms set forth in the final, signed version. According to the Goodwins, Decade provided them, and they signed, blank signature pages, and Decade's principals then attached those signature pages to a version of the purchase agreement that was materially different than the version they thought they were signing. *See* SDNY Lawsuit, Docket #75, at ¶¶ 3, 28-29.

Loeb represented 23 Capital in negotiating the loan agreement and advised 23 Capital with respect to Decade's purchase of the Goodwins' agencies. Loeb also initially represented 23 Capital in the SDNY Lawsuit. *See* May 17, 2019 Declaration of Evan K. Farber, filed herewith ("Farber Dec."), at ¶ 2. Discovery in the SDNY Lawsuit began in approximately November 2017, with each set of parties – 23 Capital, Decade, and the Goodwins – serving document requests on each other. In response to the defendants' requests, through April 2018, Loeb, on behalf of 23 Capital, produced 4,761 documents, totaling 27,287 pages. Included within this production were 1,689 documents, totaling 13,162 pages, produced by Loeb from Loeb's own files and containing Loeb's communications with Decade and its counsel. By contrast, through April 2018, Decade produced 324 documents totaling 608 pages, and the Goodwins produced 1,262 documents totaling 10,150 pages. *See id.* at ¶ 3.

Loeb was replaced as counsel in the SDNY Lawsuit in May 2018. *See* SDNY Lawsuit, Docket #189. On or about June 28, 2018, the Goodwins served a subpoena on Loeb, seeking, among other things, Loeb's documents related to the transactions and to the SDNY Lawsuit. *See*

Ex. A.[3]  Loeb timely responded on July 12, 2018, objecting to the Prior Subpoena on a number of grounds, including the attorney-client privilege and attorney work product doctrine, and because the Prior Subpoena was unduly broad and overly burdensome in light of Loeb's prior production of documents and in light of Loeb's status as a nonparty.  *See* Ex. B.  The Goodwins never responded to Loeb's objections.  *See* Farber Dec. ¶ 4.

### B.        The Decade Bankruptcy and Adversary Proceeding

On July 16, 2018, certain of the Decade entities filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware, resulting in a partial stay of the SDNY Lawsuit.  *See* SDNY Lawsuit, Docket #262, 263, 277, 281, 293, 302, 309; *see also In re Decade, S.A.C., LLC*, Case No. 18-11668 (CSS) (Del. Br.).  In January 2019, the Decade bankruptcy Trustee filed an adversary proceeding against the Goodwins, based largely on the same set of facts as alleged by 23 Capital in the SDNY Lawsuit.  *See Carickhoff, et al. v. Goodwin, et al.*, 19-50095-CSS (the "Adversary Proceeding"), Docket #1; Ex. C.  The Goodwins filed an Answer with counterclaims, again taking a position substantially similar to their position in the SDNY Lawsuit.  *See* Adversary Proceeding, Docket #7; Ex. D.

The Goodwins subsequently served five subpoenas directed at Loeb in the Adversary Proceeding:  one subpoena to Loeb, dated March 5, 2019, seeking documents (the "Subpoena"), and four deposition subpoenas to four individual Loeb attorneys.  *See* Adversary Proceeding, Docket #24, 27-28, 30-31; Ex. F; Farber Dec. ¶ 5.  The requests contained in the Subpoena duplicated the requests contained in the Prior Subpoena.  *Compare* Prior Subpoena, Requests #1-4, 6, 9, 12, *with* Subpoena, Requests #1-7.  Accordingly, on March 19, 2019, Loeb objected again, referencing and reiterating its objections to the Prior Subpoena.  *See* Ex. G.

---

[3] Unless otherwise noted, "Ex." refers to exhibits to the May 8, 2019 Declaration of Keith W. Miller (Docket #2-1 through 2-8).

During the course of several meet and confer telephone calls and a lengthy series of emails, Loeb and the Goodwins' counsel were able to narrow their dispute with respect to the four deposition subpoenas, but the Goodwins declined to narrow the scope of the Subpoena in any meaningful way. *See* Ex. H; Farber Dec. ¶ 6.

## ARGUMENT

### I.     Loeb Timely Objected to the Subpoena

Confusingly, the Goodwins' primary argument is that Loeb allegedly failed "to respond to the Subpoena in a timely manner." Motion at 5. But timeliness does not seem to be the Goodwins' actual concern. The Goodwins do not contend that Loeb failed to respond to the Subpoena in any way by the required date; instead, they argue merely that Loeb failed to comply substantively with the Subpoena through the production of documents and/or a privilege log – as opposed to serving objections.

Loeb did, in fact, serve objections on a timely basis: the Subpoena was served on March 5, 2019, and Loeb served its objections on March 19, 2019. *See* Exs. F, G. The Goodwins readily acknowledge this. *See* Motion at 5. Serving objections within 14 days was Loeb's right under Rule 45(d)(2)(B) and eliminates any timeliness argument.

Loeb also responded timely to the Prior Subpoena, which was served on June 28, 2018, with objections served on July 12, 2018. *See* Exs. A, B. If there is any untimeliness here, it is that of the Goodwins, who failed entirely to respond to Loeb's objections to the Prior Subpoena – which encompassed all of Loeb's privilege and burden objections to the current Subpoena – for a period of nearly nine months, even though the SDNY Lawsuit was not stayed as between 23 Capital (Loeb's client) and the Goodwins.

In any event, Loeb timely objected to the Subpoena and fulfilled its obligations under

Rule 45(d)(2)(B).[4]

## II.   The Subpoena Fails to Comply with Fed. R. Civ. P. 26(b)(1) and 45(d)(1)

### A.   The Federal Rules Require Proportionality of Discovery and Forbid Imposing an Undue Burden on Subpoenaed Nonparties

This Court has set forth, in several recent cases, the standards governing a motion to compel compliance with, or to quash, a nonparty subpoena.  First, "[t]he party seeking discovery bears the initial burden of proving the discovery is relevant" and meets the criteria of Rule 26(b)(1), including whether the discovery sought is "proportional to the needs of the case." *Mackey v. IDT Energy, Inc.*, No. 19 Misc. 29 (PAE), 2019 U.S. Dist. LEXIS 77101, at *7-8 (S.D.N.Y May 7, 2019) (Engelmayer, J.) (quoting Rule 26(b)(1)).  Next,

> If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden.  Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed.  Where a subpoena seeks discovery from a non-party, the district court may consider factors such as the expense or inconvenience that compliance would cause.

*Id.* at *8 (citations and internal quotation marks omitted); *see also Blake Marine Grp., LLC v. Frenkel & Co.*, No. 18-CV-10759 (AT) (KHP), 2019 U.S. Dist. LEXIS 66399, at *3 (S.D.N.Y. Apr. 16, 2019) ("Assuming the information sought is relevant and proportional to the needs of the case, the Court then considers the burden the discovery imposes on a non-party.  Federal Rule of Civil Procedure 45 requires that the Court quash or modify a subpoena that subjects a non-party to undue burden."); *Homeward Residential*, 2017 U.S. Dist. LEXIS 171685, at *52-55

---

[4] Even if the Court somehow finds that Loeb's objections were untimely, they are not necessarily waived, especially if the Subpoena is found to be overbroad and "exceed[ing] the bounds of fair discovery." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067 (JFK) (JLC), 2017 U.S. Dist. LEXIS 171685, at *49-50 (S.D.N.Y. Oct. 17, 2017) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).

(quashing subpoena under Rules 26(b)(1) and 45(d) where the issuer "failed to articulate a credible theory of the relevance of the material it seeks" and where "the material sought would pose a burden on the non-parties involved").

In considering these factors, "the 'Court engages in a balancing test to determine whether undue burden exists' because a subpoena is unreasonable," and courts do not hesitate to quash subpoenas where there is a burden to the nonparty and where "the relevance of the proposed [discovery] is, at best, marginal." *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226, 228 (S.D.N.Y. 2013) (quoting *Concord Boat*, 169 F.R.D. at 49) (applying balancing test and quashing subpoena); *see also, e.g., Blake Marine*, 2019 U.S. Dist. LEXIS 66399, at *3-4 (same); *Homeward Residential*, 2017 U.S. Dist. LEXIS 171685, at *55-56 (same).   Notably, "[a] subpoena that pursues material with little apparent or likely relevance to the subject matter . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Mackey*, 2019 U.S. Dist. LEXIS 77101, at *7 (citation omitted).

**B.      The Subpoena Is Not Proportional to the Needs of the Adversary Proceeding and Imposes an Undue Burden on Loeb**

The discovery sought by the Subpoena here cannot pass the balancing test of Rules 26(b)(1) and 45(d)(1).  Loeb has already produced its responsive, non-privileged documents – that is, its correspondence with the transaction counterparties. *See* Farber Dec. ¶ 3.  These are the most significant documents in Loeb's possession.  Not once in the parties' meet and confer calls or emails did the Goodwins' counsel dispute that fact or articulate any reason to doubt it. *Id.* In practical terms, then, the Subpoena seeks the production of Loeb's communications with its client (23 Capital) related to the transactions, as well as the related internal communications among Loeb attorneys and staff.  All or nearly all of these documents are protected from disclosure pursuant to the attorney-client privilege, attorney work product doctrine, or related

protections.   Thus, the Subpoena demands that Loeb review these documents for privilege, produce any remaining non-privileged communications, if any exist that have not already been produced, and create a privilege log for the others.   But this exercise is more burdensome than it seems when considered in light of the estimates of approximately 25,000 documents that must be gathered, processed, reviewed, and logged.  *See id*. at ¶¶ 6-7.   The processing component of that exercise – that is, converting the documents into a format in which they can readily be reviewed and either logged or produced – would cost approximately $1,200, and it would take approximately 50 days of attorney time to review this volume of documents.  *Id*. at ¶ 7.[5]

By contrast, the benefit to the Goodwins of this exercise is hard to fathom.   First, Loeb's connection to the Adversary Proceeding is tenuous to begin with:   Loeb is not a party to the Adversary Proceeding, and indeed, Loeb's former client, 23 Capital, is itself not even a party to the Adversary Proceeding.   The Goodwins' claims and defenses in the Adversary Proceeding relate principally to actions allegedly taken by Decade, not by Loeb, nor even by 23 Capital – that is, whether or not Decade or its principals defrauded the Goodwins.   There is no allegation that Loeb, or even 23 Capital, participated in or was aware of that alleged fraud.[6]   Similarly, the Trustee's claims and defenses relate principally to actions allegedly taken by the Goodwins: signing a contract, accepting a $9.5 million down payment pursuant to that contract, then refusing to abide by the contract and siphoning off commission payments from their

---

[5] A standard "rule of thumb" rate for document review is 500 documents per day, which, for approximately 25,000 documents, equates to approximately 50 days of review time.  Here, the process could conceivably take longer since every document will need to be reviewed carefully for privilege.  *See* Farber Dec. ¶ 7.  Of course, even if the review time could be halved, the burden on Loeb would still be significant.

[6] Although the Subpoena includes a request for documents "concerning any allegation that your performance of legal services in connection with . . . your representation of [23 Capital] was in any way improper or deficient," *see* Ex. F at Request #7, this request is entirely baseless and gratuitous; no such allegation has ever been made.

contractually mandated destination.   There is no allegation that Loeb, or even 23 Capital, participated in or was aware of those alleged breaches.   Thus, the likelihood that the Adversary Proceeding turns in any significant degree based on any documents produced by Loeb (beyond the nearly 1,700 documents Loeb has produced already) is, at best, remote.

Moreover, while it is conceivable that Loeb will uncover a few documents that are not privileged, that is pure speculation at this stage.   Instead, the Goodwins will likely receive merely an exceedingly long privilege log.   And the utility of such a log will be minimal.   The unremarkable fact that Loeb lawyers frequently communicated with each other and with their client about these transactions will not contribute meaningfully to the pool of available evidence in the underlying Adversary Proceeding.   This is not a case where the existence of such communications, or their general subject matter, would be material.   Nor could the Goodwins reasonably expect to challenge Loeb's privilege assertions over its communications with its client or its related internal communications about this transactions.   Even if the Goodwins anticipate raising a crime/fraud argument, that would not succeed against Loeb either, since the Goodwins' allegations of fraud are against Decade – not against Loeb, nor even against Loeb's client.   Accordingly, in sum, the result of all of Loeb's efforts in responding to the Subpoena is most likely to be just a long privilege log, and nothing further.

This excessive degree of burden (including approximately 50 days of attorney review time) for this minimal amount of benefit (a lengthy privilege log from a nonparty with at best ancillary relevance to the dispute) would fail the proportionality test of Rule 26(b)(1).   But to impose such a burden on a nonparty unquestionably fails the mandate of Rule 45(d)(1). "Litigants and courts are instructed to be especially solicitous of non-party targets of subpoenas." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 U.S. Dist.

LEXIS 139983, at *13 (S.D.N.Y. Aug. 30, 2017) (citing Rule 45(d)(1)).  The Goodwins have violated this mandate here.

### C.        The Goodwins' Arguments to the Contrary Are Unavailing

The Goodwins raise several arguments to the contrary, each of which is unavailing.

First, the Goodwins contend that the balancing test should shift in their favor because they offered to narrow the scope of the Subpoena.  Their offer, however, does not meaningfully limit the burden.  Applying the Goodwins' proposed search terms would not actually narrow the Subpoena at all.  Instead, it would yield a set of approximately *59,000* documents, since the proposed search terms include common nouns like "game" and common names like "Aaron" and "Eric."  *See* Ex. H at 5; Farber Dec. ¶ 8.  The Goodwins also offered to narrow the date range of the Subpoena, limiting it to documents dated between December 2015 and April 2016.  *See* Ex. H at 5.  That, too, is insufficient to reduce the burden.  Since Loeb's engagement on behalf of 23 Capital did not begin until approximately January 2016, *see* Farber Dec. ¶ 2, moving the start of the date range from April 1, 2014 to December 1, 2015 is meaningless.  And since the transactions closed in February 2016, the months with the highest volume of correspondence are still included within the "limited" timeframe.  There were some follow-up communications related to collections and other issues – and Loeb has done some unrelated work for 23 Capital – in the months that followed April 2016, so that limitation has some value, but the volume of potentially responsive documents within the Goodwins' proposed date range is still approximately 10,000 – which would still require approximately *20 days* of attorney time to review.  *Id*. at ¶ 8.  Applying both the Goodwins' proposed search terms and their proposed date range would result in a set of approximately 22,000 documents.  *Id*.[7]

---

[7] The Goodwins at one point proposed that Loeb could prepare a "categorical" privilege log, *see*

Loeb has offered to compromise more reasonably. *See* Ex. H at 2, 7. That offer remains open. If the Goodwins were to identify a targeted set of documents (say, during a specific week, or with a specific interlocutor, or which hit upon a specific, non-generic search term) that is of heightened relevance to their claims and defenses in the Adversary Proceeding, Loeb could conduct that search. But the Goodwins have never identified such a discrete set of documents. Nor have the Goodwins identified clearly what exactly they hope to learn from Loeb's production, which might enable Loeb to identify and search a discrete set of documents. To search 59,000, 25,000, or even 10,000 documents is simply not reasonable in this situation.

The Goodwins also contend that Loeb must produce a privilege log in order to maintain its objections on the basis of the attorney-client privilege, the attorney work product doctrine, and related protections. But the question of whether the Subpoena exceeds the limitations of permissible discovery (because it is not proportional to the needs of the case, is unduly burdensome, or otherwise) must logically precede the question of whether a privilege log is required. If the Subpoena exceeds the limits of permissible discovery, then no response is required at all. A privilege log is required only where a production is.

The Goodwins point to the holding of the bankruptcy judge in the Adversary Proceeding, who required 23 Capital (which, like Loeb, received a subpoena from the Goodwins, and which contested it in that court) to produce a privilege log. *See* Ex. H at 5. But that ruling is of course not binding on this Court, and in that situation, 23 Capital apparently did not raise the preliminary question of whether the Subpoena was disproportionate or unduly burdensome to begin with.

In any event, the decision of the Delaware bankruptcy court is distinguishable for several

---

Ex. H at 8, but that offer was never repeated. Regardless, a categorical log is unlikely to meaningfully reduce the burden, since it would not limit the number of documents for review.

reasons – and in fact provides additional support for Loeb's objections.  First, the very fact that 23 Capital will be producing a privilege log, which presumably will include its responsive communications with Loeb, renders Loeb's privilege log largely redundant.  The only non-redundant component of Loeb's own log is likely to be its internal communications, and for the reasons described above, these communications (let alone a log of them) are likely to be of no probative value in the underlying Adversary Proceeding.  Second, because of these internal communications, Loeb likely has far more potentially privileged communications than 23 Capital has, rendering a log from Loeb that much more burdensome.  Both of these factors shift in Loeb's favor the balancing test under Rules 26(b)(1) and 45(d)(1).[8]

### III.    The Goodwins Should Be Required to Pay Loeb's Costs

In an effort to break the logjam, Loeb requested that, if it were to comply with the Subpoena, the Goodwins defray Loeb's cost of doing so.  *See* Ex. H at 4, 7.  The Goodwins refused.  *See id*. at 3, 5.  Here, cost-shifting in the form of awarding reasonable litigation fees is appropriate under Rule 45 if the Court quashes the Subpoena, and if the Court does not, cost-shifting is appropriate in the form of requiring the Goodwins to compensate Loeb's time and costs of compliance.

Because Rule 45 directs courts to minimize the burden on nonparties, cost-shifting is recognized as being "particularly appropriate" in the context of subpoenas.  *US Bank Nat'l Ass'n v. PHL Variable Ins. Co*., No. 12 Civ. 6811 (CM) (JCF), 2012 U.S. Dist. LEXIS 158448, at *11-12 (S.D.N.Y. Nov. 5, 2012) (collecting cases).  If the Court determines that the Subpoena should

---

[8] The Delaware bankruptcy court's requirement that 23 Capital produce a privilege log is also distinguishable because Loeb, as a law firm, is uniquely situated.  When a law firm is subpoenaed, the privilege considerations are ubiquitous, but the application of the privilege is also, in substantial part, obvious and indisputable.  That is especially the case here, where Loeb has already produced its non-privileged documents.  In this situation, the need for a privilege log is greatly diminished.

be quashed, then Rule 45 requires that the Court "*must . . .* impose an appropriate sanction –

which may include . . . reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1) (emphasis added).

Thus, in *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, No. 15 Misc. 191 (LTS), 2015

U.S. Dist. LEXIS 177919, at *4-5 (S.D.N.Y. Oct. 6, 2015), the Court found that the movant, like

the Goodwins here, had:

> [F]ailed to fulfill its Rule 45 duty to "avoid imposing undue burden or expense
> upon a person subject to the subpoena" when it initially refused to pay the
> reasonable cost of legal review that was required to protect the confidentiality of
> third-party information. *See* Fed. R. Civ. P. 45(d)(1). It compounded its error in
> moving to compel the production on the same unduly burdensome terms. Under
> these circumstances, its motion was not substantially justified and an award of
> reasonable litigation fees to [the subpoena respondent] is not unjust.

As such, if the Court finds in Loeb's favor on this motion, it should require the Goodwins

to defray Loeb's costs in defending itself.

If the Court does not quash the Subpoena, however, it should at least require the

Goodwins to bear the cost of the discovery they seek. Indeed, courts routinely recognize that

cost-shifting promotes efficiency in discovery. Thus, "[c]ourts have deemed [the provisions of

Rule 45] to make cost shifting *mandatory* in all instances in which a non-party incurs significant

expense from compliance with a subpoena." *Sands Harbor Marina Corp. v. Wells Fargo Ins.*

*Servs. of Or.*, No. 09-CV-3855 (JS) (AYS), 2018 U.S. Dist. LEXIS 58729, at *10-11 (E.D.N.Y.

Mar. 31, 2018) (emphasis added) (citing *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th

Cir. 2013)) (internal quotations and punctuation omitted). In determining whether cost-shifting

is warranted, Courts consider the following factors: "(1) whether the nonparty has an interest in

the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3)

whether the litigation is of public importance." *US Bank*, 2012 U.S. Dist. LEXIS 158448, at

*11-12 (quoting *In re World Trade Center Disaster Site Litig.*, No. 21 MC 100, 2010 U.S. Dist.

LEXIS 96819, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010)).

Here, all of these factors favors cost-shifting.  First, Loeb does not have any interest in the outcome of the litigation – not even indirectly, as its former client is not a party to the Adversary Proceeding either.  Second, Loeb is in no better position to bear the costs of the expansive review the Goodwins desire than the Goodwins themselves; although Loeb is an entity and the Goodwins are individuals, the Goodwins appear to have substantial assets, as evidenced by their retention of a major law firm in the SDNY Lawsuit and the Adversary Proceeding, and as evidenced by the fact that they continue to retain the $9.5 million down payment that they received when the transactions closed.  Third, this litigation involves a purely private dispute.  In such circumstances, courts have found cost-shifting to be appropriate.  *See Namenda,* 2017 U.S. Dist. LEXIS 139983, at *30 (ordering cost-shifting for nonparty drug company related to marketing of generic drug by affiliated defendant company); *US Bank*, 2012 U.S. Dist. LEXIS 158448, at *11-12 (denying motions to quash on condition that issuer bear costs of compliance with subpoena).

Cost-shifting is particularly favored where there is a dispute regarding "the value of the discovery requested and the burden of production."  *Id*. at 10.  In such situations, courts have recognized that "the prudent course is to allocate  the costs of discovery in a manner that places the incentive on the parties to focus the production and minimize costs," and thereby gauge whether information collected is "useful enough to proceed with broader discovery."  *Id.* at 10-12.  In light of Loeb's efforts to craft a reasonable compromise, which were summarily rejected by the Goodwins, and in light of the three factors detailed above, if the Court orders compliance with the Subpoena – thereby necessitating a wholesale review of 59,000, 25,000, or even 10,000 presumptively privileged documents – it would be appropriate for the Goodwins to bear the costs

15

of such a review.

## CONCLUSION

For the reasons set forth above, Loeb & Loeb LLP respectfully requests that this Court deny the Goodwins' motion to compel and grant Loeb's cross-motion to quash, with costs; or, in the alternative, modify the Subpoena and order the Goodwins to pay for Loeb's costs and fees related to any Subpoena response; and award to Loeb such other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 17, 2019

                                               LOEB & LOEB LLP

                                    By:  /s/  *Evan K. Farber*
                                          Evan K. Farber,
                                          efarber@loeb.com
                                          William M. Hawkins
                                          whawkins@loeb.com
                                          Erin Smith Dennis
                                          edennis@loeb.com
                                          345 Park Avenue
                                          New York, NY 10154
                                          Tel. 212.407.4000

16