UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE SUBPOENA TO LOEB & LOEB LLP

19 Misc. Civ. 241 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion brought by Aaron Goodwin, Regina Goodwin, and Eric Goodwin (collectively, the "Goodwins"), under Federal Rules of Civil Procedure 37 and 45(d)(2)(B)(i), to compel compliance with a subpoena served upon the law firm of Loeb & Loeb ("Loeb"), in connection with a pending adversary proceeding before the U.S. Bankruptcy Court for the District of Delaware, as well as Loeb's cross-motion to quash the subpoena. For the reasons that follow, the Court grants the Goodwins' motion to compel compliance with the subpoena and denies Loeb's motion to quash, subject, however, to the essential condition that the Goodwins bear the costs—and a substantial portion of the legal fees—incurred in connection with Loeb's compliance with the subpoena.

I.  **Background**[1]

   A.  **Facts**

      1.  **The Underlying Litigation**

On September 12, 2017, XXIII Capital Limited ("23 Capital") filed a verified complaint in the United States District Court for the Southern District of New York against Decade, S.A.C.,

---

[1] The following facts are drawn from the declaration of Keith W. Miller filed in support of the motion to compel, Dkt. 2 ("Miller Decl."), and exhibits attached thereto, and the declaration of Evan K. Farber filed in support of Loeb's cross-motion to quash, Dkt. 7 ("Farber Decl."), and exhibits attached thereto.

1

Contracts, LLC, Decade, S.A.C. Executives, LLC, Decade, S.A.C. I, LLC, Decade, S.A.C. II, LLC, Decade, S.A.C. III, LLC, Decade, S.A.C., LLC, and Gotham S&E Holdings, LLC (the "Decade Entities"); the Decade Entities' principals, Christopher Aden and Dorsey James (together with the Decade Entities, "Decade"); Aaron Goodwin and Eric Goodwin; and Goodwin Associates Management Enterprises, Inc. ("GAME") and Goodwin Sports Management, Inc. ("GSM" and with GAME, the "Goodwin Entities"). *See XIII Capital Ltd. v. Decade, S.A.C., LLC, et al.*, Case No. 17 Civ. 6910 (GHW) (the "SDNY Action"), Dkt. 1 ("SDNY Compl."). 23 Capital alleged that, in a series of integrated transactions dated on or about February 22, 2016, Decade purchased two sports agencies that had been owned and managed by the Goodwins, and that 23 Capital extended a $20 million senior secured loan to Decade to fund that transaction. Upon the closing of the transactions, the Goodwins allegedly received a down payment of $9.5 million and became senior employees of Decade. SDNY Compl. ¶¶ 27–51.

23 Capital further alleged that Decade repeatedly failed to make required payments against the loan, and in December 2016, 23 Capital sent Decade a default letter. *Id.* ¶¶ 62–69. In mid-2017, Capital 23 alleged, it discovered that Decade was failing to make the requisite payments because Aaron Goodwin was receiving the payments at issue directly from the athletes associated with the sports agencies, retaining a large portion for himself, and forwarding only smaller portions of the payments to Decade, in violation of various transaction documents. *Id.* ¶¶ 78–80. Capital 23's lawsuit sought recovery for, *inter alia*, breach of the loan agreement.

On October 20, 2017, Aaron and Eric Goodwin answered the complaint and asserted cross-claims against the Decade Entities and their principals, arguing that the alleged transfer of shares in the Goodwin Entities to the Decade Entities was the product of fraud. *See* SDNY Action, Dkt. 75. The Decade Entities also asserted counterclaims against 23 Capital for breach

2

of contract, unjust enrichment, and tortious interference with prospective contractual relations. *See* SDNY Action, Dkt. 76.

Discovery in the SDNY lawsuit began in November 2017. Farber Decl. ¶ 3. Through 2018, Loeb, on behalf of 23 Capital, produced more than 4,700 documents, including more than 1,600 documents produced by Loeb, from Loeb's records, concerning Loeb's communications with Decade and Decade's counsel. *Id.* In May 2018, Loeb was replaced as 23 Capital's counsel in the SDNY Action. *Id.* ¶ 4.

On June 28, 2018, the Goodwins served a subpoena on Loeb—separate from the subpoena at issue in the instant motion. *See* Miller Decl., Ex A ("First Subpoena"). That subpoena sought from Loeb 12 categories of documents principally relating to Loeb's role in facilitating the transaction between 23 Capital, Decade, and the Goodwins. On July 12, 2018, Loeb timely served its objections to the subpoena, asserting that the documents produced by 23 Capital in the SDNY Action encompassed "all of the most relevant and important non-privileged documents that Loeb has." Miller Decl., Ex. B ("First Loeb Objections"). It also argued that the First Subpoena was overly broad, unduly burdensome, disproportionate to the needs of the SDNY Action, and protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

On July 16, 2018, certain of the Decade Entities filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. *See In re Decade, S.A.C., LLC*, No. 18-bk-11668 (Bankr. D. Del.) (CSS); Farber Decl. ¶ 5. In January 2019, the Decade bankruptcy Trustee filed an adversary proceeding against the Goodwins (the "Adversary Proceeding"). *See Carickhoff v. Goodwin*, Adv. Proc. No. 19-50095 (CSS) (Del. Bankr.). The Trustee sought a declaratory judgment that shares in the

Goodwin Entities had been validly transferred to the Decade Entities and therefore constitute property of the Decade Entities' estates. *See* Miller Decl., Ex. C ("Adv. Proc. Compl.").

### 2. The Subpoena

On March 5, 2019, the Goodwins served a subpoena *duces tecum* on Loeb directing the production of documents in connection with the Adversary Proceeding. *See* Miller Decl., Ex. F (the "Subpoena"). Specifically, the Subpoena directs Loeb to produce:

> 1. Documents and external Communications concerning negotiations in connection with each of the Loan Agreement and False Contract;
>
> 2. Documents and external Communications concerning due diligence conducted in connection with each of the Loan Agreement and the False Contract, including, without limitations, due diligence into the collateral for any loan or financing from XXIII Capital to Decade;
>
> 3. Documents sufficient to show the identity and responsibilities of employees, contractors, agents, representatives or attorneys of Loeb & Loeb who played any role in connection with the Loan Agreement and the False Contract;
>
> 4. Non-privileged Documents and external Communications concerning any communication with third parties regarding the Loan Agreement and the False Contract and their respective negotiations or due diligence;
>
> 5. Documents and external Communications concerning any communication with or about the Goodwins, the SDNY Litigation, this lawsuit, and/or any dispute among or between the parties;
>
> 6. Documents and external Communications supporting the Goodwin's Counterclaims and/or defenses that Plaintiff failed to disburse funds as required by the Loan Agreement;
>
> 7. All non-privileged Documents and external Communications concerning any allegation that your performance of legal services in connection with the Loan Agreement and the False Contract, this litigation, and/or your representation of the Plaintiff was in any way improper or deficient.

Subpoena at 7–8. On March 19, 2019, Loeb objected to the Subpoena. Farber Decl., Ex. G ("Loeb Objections"). It argued that several of the topics raised in the Subpoena entirely duplicated requests in the First Subpoena, issued in June 2018 in connection with the SDNY

4

Action. Therefore, Loeb argued, the Subpoena was objectionable because it was overly broad, unduly burdensome, disproportionate to the needs of the Adversary Proceeding, and because it sought privileged documents. Loeb further observed that the Goodwins' counsel had not "responded to our objections to the First Subpoena in the eight months that have passed since we served them. Accordingly, [the Goodwins] have waived any rights [they] might have had to oppose our objections." *Id.* at 2.

The Goodwins represent that the parties have repeatedly conferred to resolve their dispute consensually. During the course of these conversations, the Goodwins assert, Loeb's counsel represented that certain responsive documents remain in Loeb's custody but, contrary to what Loeb had stated in its objections, were not included in 23 Capital's production in the SDNY Action. Further, the Goodwins assert that Loeb's counsel did not clarify which categories of responsive documents had been withheld or review withheld documents to determine whether the documents were protected by attorney-client privilege. Miller Decl., Ex. H (attorney correspondence).

To address Loeb's concern that the Subpoena was overly burdensome, the Goodwins' counsel agreed to limit the production to documents created in a five-month window, between December 2015 and April 2016, and apply a narrowing set of search terms. *Id.* Loeb rejected these narrowed parameters, stated that it would not produce a privilege log, and maintained that it would review the documents in its possession for responsiveness only if the Goodwins agreed to defray the expenses associated with such review. *Id.* To date, Loeb has not produced documents responsive to the Subpoena. For its part, Loeb represents that there appear to be approximately 25,000 documents responsive to the Subpoena, and that—although it has not conducted a comprehensive review of these documents—nearly all are likely privileged.

5

**B.      Procedural History**

On May 8, 2019, the Goodwins initiated this miscellaneous action and filed a motion to compel Loeb to comply with the Subpoena, Dkt. 1, a supporting memorandum of law, Dkt. 3 ("Goodwin Mem."), and a supporting declaration and accompanying exhibits, Dkt. 2. On May 17, 2019, Loeb cross-moved to quash the subpoena, Dkt. 7, filed a memorandum in support of its cross-motion and in opposition to the Goodwin's motion, Dkt. 8 ("Loeb Mem."), and filed a supporting declaration and accompanying exhibits, Dkt. 9. On May 24, 2019, the Goodwins filed a reply in support of their motion to compel and in opposition to Loeb's motion to quash. Dkt. 10 ("Goodwin Opp."). On May 28, 2019, Loeb filed a reply in further support of its motion to quash. Dkt. 11 ("Loeb Reply").

**II.     Applicable Legal Standards**

Federal Rule of Civil Procedure 45(a)(1) allows a party to serve a subpoena on a non-party for the production of documents. *See* Fed. R. Civ. P. 45(a)(1). Under Rule 45(d), the subpoena recipient may move to quash or modify the subpoena if it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)–(iv).

On a motion to quash, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). "A subpoena that pursues material with little apparent or likely relevance to the subject matter . . . is likely to be quashed as unreasonable even

6

where the burden of compliance would not be onerous." *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (internal quotation marks and citation omitted).

The relevance standards set out in Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties. *Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing *Malibu Media, LLC v. Doe*, No. 15 Civ. 3147, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016)). Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 139.

If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden. *See Griffith v. United States*, No. M8-85 (JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Night Hawk Ltd.*, 2003 WL 23018833, at *8. Where a subpoena seeks discovery from a non-party, the district court may consider factors such as the expense or inconvenience that compliance would cause. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). The

trial court has broad discretion to determine whether a subpoena imposes an undue burden. *See Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

### III. Discussion

The Goodwins argue that the documents sought are squarely relevant to the Adversary Proceeding, but that Loeb refuses to produce any of the requested documents and refuses to explain why such production would be unduly burdensome. The Goodwins further argue that they have offered reasonable, narrowed search parameters that would minimize the burden associated with production. Specifically, the Goodwins have suggested that Loeb review documents only within a five-month period surrounding the purported February 2016 share transfer, and they have proposed targeted search terms to isolate key communications. The Goodwins also argue that Loeb, while claiming privilege, has failed to produce a privilege log identifying documents as to which it asserts a claim of privilege, in violation of Rule 45(e)(2)(A). Finally, the Goodwins argue that Loeb's request for cost-shifting is inappropriate because the documents at issue are not kept in an inaccessible format.

Loeb counters that the Subpoena does not comply with Fed. R. Civ. P. 26(b)(1) and 45(d)(1) because it is disproportionate to the needs of the Adversary Proceeding and because the Subpoena imposes an undue burden on Loeb. Loeb argues that, even after applying the narrowing parameters the Goodwins propose, there are approximately 25,000 documents that are responsive to the Subpoena, and it would be highly burdensome to gather, process, review, and log these materials. Loeb projects that the cost of review and production would be approximately $1,200, and that it would take 50 days of attorney time to process the estimated volume of documents. Farber Decl. ¶ 7. By contrast, Loeb argues, the benefit of production to the Goodwins is negligible because the Adversary Proceeding does not involve Loeb or its

8

former client, 23 Capital. Finally, Loeb contends that its refusal to produce a privilege log while litigating the validity of the Subpoena is proper, because the question whether the Subpoena is overbroad logically precedes the question whether responsive materials are privileged so as to require creation of a privilege log.

The documents the Goodwins request are plainly relevant to the Adversary Proceeding. The dispute before the Bankruptcy Court involves the validity of purported February 2016 agreements regarding the transfer of shares in the Goodwin Entities to the Decade Entities. The Goodwins contend that those purported agreements were the product of fraud. It follows that Loeb, as counsel to the Decade Entities' lender, may possess documents and communications concerning the validity of, and the circumstances surrounding, the purported share transfer. These documents presumably include documents regarding the negotiations of the share transfer and the agreement of 23 Capital—Loeb's client—to finance the Decade Entities' purported acquisition; documents reflecting due diligence into the collateral for 23 Capital's financing; and communications with third parties concerning due diligence as to the Decade Entities.

However, the burden on Loeb associated with production is substantial. It represents that it maintains approximately 25,000 potentially responsive documents, each of which must be reviewed for privilege, necessitating approximately 50 attorney-days of review. This burden is all the more significant because Loeb is a non-party to the Adversary Proceeding, and "Rule 45 directs Courts to minimize the burden on non-parties." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 12 Civ. 6811 (CM)(JCF), 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012).

Where, as here, the parties dispute the value of the discovery sought and the burden of production, "the prudent course is to allocate the costs of discovery in a manner that place the incentive on the parties to focus the production and minimize costs." *Id.*; *see also Zubulake v.*

*UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003). "Cost sharing is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties." *US Bank*, 2012 WL 5395249, at *4 (citing *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007); *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011); *MacNamara v. City of New York*, No. 04 Civ. 9612, 2006 WL 3298911, at *5 (S.D.N.Y. Nov. 13, 2006); *Prescient Acquisition Gr., Inc. v. MK Publishing Tr.*, No. 05 Civ. 6298, 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006)). In considering whether cost-shifting is warranted, courts consider "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *In re World Trade Ctr. Disaster Site Litig.*, No. 21 MC 100, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010).

Here, those factors favor shifting costs and substantial fees associated with Loeb's subpoena compliance from Loeb to the Goodwins. To be sure, Loeb, as a law firm, is a sophisticated entity with the means to review efficiently the documents at issue, including, if Loeb so elects, through deploying in-house legal staff to this exercise. However, neither Loeb nor its former client, 23 Capital, is a party to the Adversary Proceeding. And the issue presented by the Adversary Proceeding is of a purely private nature. Further, Loeb's use of its employees to undertake the search, review, and production of responsive documents unavoidably works an opportunity cost on Loeb as a functioning law firm. An order requiring the Goodwins to bear costs and fees associated with the production and review of the documents at issue will incent them to tightly focus the subpoena's demands and to consider maximally efficient means of document review. It will further encourage the Goodwins to judge, at the threshold, whether Loeb likely possesses enough non-privileged documents of consequence to the Adversary

Proceeding to justify undertaking extensive, and discovery. *See US Nat'l Bank*, 2012 WL 5395249, at *4.

Accordingly, the Court orders that, should the Goodwins elect to pursue the Subpoena served on Loeb, the Goodwins shall bear all customary search, collection, and production costs associated with Loeb's compliance with the Subpoena. Loeb is to invoice Goodwin for such costs and Goodwin is to recompense Loeb promptly. As to fees, the Court is mindful that Loeb may elect to use in-house lawyers and legal assistants to assist in complying with the Subpoena, and therefore will not incur out-of-pocket outlays. The Court is also mindful that the customary billing rates that Loeb utilizes for its lawyers and legal assistants assuredly have a profit margin built in which is not properly passed along to the Goodwins. The Court accordingly orders that, should the Goodwins elect to pursue the Subpoena, they are to reimburse Loeb at the following hourly rates for personnel (in-house or outside) whom Loeb uses on this project: for lawyers, $150/hour; for non-lawyer personnel, $75/hour. This is to apply to all hours worked on this project *after* the first 25 hours of lawyer time, and to all hours *after* the first 25 hours of non-lawyer time, for which initial hours Loeb is not to be reimbursed. The Court exempts these initial hours from the above fee-shifting arrangement in recognition of the reasonable expectation that a third party will devote some time, *gratis*, to compliance with a valid subpoena before seeking reimbursement for fees. Loeb is to provide the Goodwins with time records that describe sufficiently the tasks on which these personnel worked. This arrangement, and these rates, the Court is persuaded, incent both the Goodwins and Loeb to design, and hopefully collaborate on, a discovery process that is tightly focused and efficient.[2]

---

[2] For avoidance of doubt, the Court does *not* authorize the shifting of attorneys' fees or costs for work performed by Loeb attorneys in litigating the instant motion or in any future dispute regarding the Subpoena. Nor are hours incurred negotiating search terms or parameters with the

11

As for the Goodwins' argument that Loeb was already required to produce a privilege log, that argument is unavailing. The Court agrees with Loeb that the question whether a subpoena is valid logically precedes the question whether a document that is otherwise responsive to that same subpoena is privileged and not subject to production.

## CONCLUSION

For the reasons set out above, the Goodwins' motion to compel is granted, subject to the condition that they will bear the costs and substantial fees associated with complying with the Subpoena, as more fully described herein. Loeb's corresponding motion to quash therefore is denied, subject to the condition. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 1 and 7.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: June 11, 2019
       New York, New York

---

Goodwins' counsel countable towards the hours on which fees are to be reimbursed. This order solely covers fees and costs incurred in complying with the subpoena.